## N. C. MONROE CONSTRUCTION COMPANY v. HENRY COAN, CHARLES D. FLOYD, AND RALPH JONES

No. 7618SC260

(Filed 6 October 1976)

1. **Accord and Satisfaction § 2— bar to breach of contract claim**

   Accord and satisfaction is a bar to the assertion of any claims on the underlying contract and would preclude defendants from asserting claims for breach of such contract.

2. **Accord and Satisfaction § 1— jury question — summary judgment**

   Normally, the existence of an accord and satisfaction is a question of fact for the jury, but where the only reasonable inference is its existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record.

3. **Accord and Satisfaction § 1— dispute as to amount due**

   Accord and satisfaction may result where there is a dispute as to the amount actually due followed by payment of something less than or different from the amount claimed.

4. **Accord and Satisfaction § 1— summary judgment**

   The trial court properly entered summary judgment for plaintiff on the issue of accord and satisfaction where plaintiff's evidence and defendants' admissions showed that plaintiff completed a motel project for defendants, there was a dispute as to the amount due plaintiff, an agreement was reached whereby defendants would execute two notes and plaintiff would execute an affidavit acknowledging payment in full and waiving its materialman's and mechanic's liens, and the notes were given in full satisfaction of the original debt, and where defendants' affidavit amounted to a mere denial that problems concerning the motel project had been resolved.

5. **Accord and Satisfaction § 1— execution of notes — consideration**

   Plaintiff contractor's execution of an affidavit acknowledging payment in full for a construction project and waiving its right to file mechanic's or materialmen's liens constituted sufficient consideration for notes given by defendant in settlement of a dispute as to the amount remaining due for the project.

6. **Duress— threat to breach contract**

   Defendants' assertion that they executed two notes to plaintiff in settlement of a dispute as to the amount remaining due for a motel construction project because plaintiff "implicitly" threatened to discontinue work on two other projects was insufficient to raise a genuine issue of fact as to duress as a defense to the notes.

APPEAL by defendants from *Seay, Judge.* Judgment entered 5 February 1976 in Superior Court, GUILFORD County. Heard in the Court of Appeals 24 August 1976.

Plaintiff, a construction firm, and defendants, developers, entered a contract on 25 August 1972 for the construction of a motel (hereafter "the project") in Charleston, South Carolina. The contract called for a guaranteed maximum cost of $1,412,-170.00. Plaintiff promised completion of the project by 1 June 1973. The project was completed in September 1973, and defendants went into possession. At this time plaintiff was also engaged in two other large construction projects for defendants.

Upon completion of the project in September 1973, plaintiff and defendants met in Myrtle Beach, South Carolina, to discuss the project and its problems. Among the items discussed were the amount remaining due to plaintiff and plaintiff's claims for extras above the contract price. As a result of the discussions, defendants agreed to pay to plaintiff $128,239.00 by certified check and to execute two promissory notes payable to the order of plaintiff in the amounts of $100,000.00 and $89,715.53 respectively. Plaintiff agreed to execute and deliver to defendants an owner's and contractor's affidavit acknowledging payment in full and waiving any lien rights in the project. The notes and owner's and contractor's affidavit were subsequently executed and delivered by the respective parties.

Defendants failed to pay the notes when due. Plaintiff filed suit on 4 March 1975 alleging execution of the notes and failure to pay. Defendants answered and counterclaimed claiming breach of contract for delay in completion and exceeding the maximum guaranteed cost. Defendants also raised as defenses failure of consideration and duress. Plaintiff's reply raised as affirmative defense to the breach of contract a claim of accord and satisfaction, claiming that the agreement of September 1973 was complete and total satisfaction of all of the parties' obligations on the contract and further that defendants were estopped from asserting the contract claims. The parties entered into discovery, with plaintiff requesting admissions.

On 8 August 1975 plaintiff moved for summary judgment under Rule 56 presenting in support of the motion the affidavit of N. C. Monroe, president of N. C. Monroe Construction Company. Defendants submitted an affidavit in opposition to the motion. Judge Seay granted summary judgment for the plaintiff on 5 February 1976. In granting summary judgment, he found the following facts, *inter alia,* to be undisputed:

"2. The project called for in the documents (hereinafter the 'Charleston Project') was constructed by the

plaintiff, and defendants took occupancy thereof in early September, 1973. Subsequently in late September, 1973, representatives of the plaintiff met with the defendants at Myrtle Beach, South Carolina, at which meeting the Charleston Project and sums due for construction thereof were discussed. Defendants contend that during the course of that settlement meeting, there was a dispute between the defendants and the plaintiff as to the amount of money owing to the plaintiff under the contract and for the construction of the project.

"3. At such meeting, an agreement was reached whereby the defendants agreed to deliver to the plaintiff $128,-239.00 by means of a certified check and two notes in the amounts of $100,000 and $89,715.53, which notes are the subject of this action. As part of such agreement, plaintiff was to execute an Owner's and Contractor's Affidavit acknowledging payment in full for construction of the project and waiving its mechanics lien against the project in order for the defendants to obtain permanent financing on the Charleston Project as constructed.

"4. Subsequent to the September, 1973, meeting, and in compliance with the agreement reached thereat, defendants executed the notes which are the subject of this action. Said notes are dated September 10, 1973, one being in the amount of $100,000 with interest at the rate of 9% per annum payable on or before June 10, 1974, and the other in the amount of $89,715.53 with interest at the rate of 9% per annum payable on demand, copies of which are attached to plaintiff's Complaint. The afore-described notes were delivered by the defendants to the plaintiff along with a certified check in the amount of $128,239. Pursuant to the agreement reached at the September, 1973, meeting and in return for the notes and certified check, plaintiff executed the Owner's and Contractor's Affidavit, a copy of which is attached to plaintiff's Reply, thereby acknowledging payment in full of all sums due under the contract for construction and waiving its lien against the project. The Owner's and Contractor's Affidavit was subsequently completed and furnished to the title insurance company by the defendants in order to obtain permanent financing on the Charleston Project.

"5. The making and delivery of the two notes which are the subject matter of this action by defendants was outside of the scope of the contract between plaintiff and defendants for the construction of the Charleston Project, since such contract did not provide for or require the defendants to make and deliver such notes.

"6. Plaintiff held the two notes which are the subject of this action until July 11, 1974, at which time the plaintiff sent a letter to the defendants inquiring as to when payment could be expected on the notes. In reply thereto, defendants informed the plaintiff that they were experiencing difficulties in obtaining funds to make payment on the notes due to the recessionary period which had struck the motel market and due to the difficulty in finding secondary financing on the project because of the tightness of the money market. Defendants also informed the plaintiff that they were constantly attempting to get secondary financing for the project so that the notes could be paid.

"7. After the inquiry of July 11, 1974, and response from the defendants, there were frequent telephone conversations between representatives of the plaintiff and the defendants dealing with payment of the notes and the difficulties being experienced by the defendants in obtaining additional financing so that the obligations could be satisfied. At no time during these conversations did the defendants raise the question of delay in construction or cost of the project. The sole issue discussed was how the defendants were to obtain the funds to satisfy the notes."

Judge Seay then concluded as follows:

"1. There is no genuine issue as to any material fact, and the plaintiff is entitled to a judgment on all issues as a matter of law."

\* \* \*

"3. There was consideration for the making and delivery of the notes, since the making of such notes resulted directly from the amount remaining due on the underlying obligations on the construction contract for the Charleston Project, and since plaintiff furnished the defendants with an Owner's and Contractor's Affidavit in return therefor. By means of the Owner's and Contractor's Affidavit, plain-

tiff waived its legal rights and remedies by acknowledging payment in full for the construction called for in the contract and waived its rights and interest in the construction project, including the right to file and perfect its mechanic's lien under the laws of South Carolina. Defendants used such Owner's and Contractor's Affidavit for their benefit by completing and furnishing it to the title insurance company in order to obtain permanent financing on the project as constructed.

"4. The agreement between the plaintiff and the defendants at the September 19, 1973, meeting in Myrtle Beach, South Carolina, whereby the plaintiff was to receive a certified check for $128,239 along with notes in the amounts of $100,000 and $89,715.53 in return for plaintiff's acknowledgment of payment in full and waiver of lien in the form of the Owner's and Contractor's Affidavit, constitutes a full and complete settlement of the underlying obligations arising from the contract for construction and the actual construction pursuant thereto. The defendants and plaintiff performed the September, 1973, agreement by defendants' delivery to plaintiff of a certified check in the amount of $128,239 and the two notes in the amounts of $100,000 and $89,715.53 which are the subject of this action, and by plaintiff's delivery of the Owner's and Contractor's Affidavit to the defendants. The making of the September 1973 agreement along with the performance thereof constitutes an accord and satisfaction of all obligations, disputes and matters arising from the contract for construction of the Charleston Project. Accordingly, all matters relating to the construction contract and all matters relating to the construction of the Charleston Project have been resolved, and all defenses relating to the underlying construction contract and the actual construction, including the defenses raised by the defendants of delay in completion and excessive cost of construction, cannot now be asserted.

"5. Plaintiff relied upon the conduct of the defendants at the September, 1973 meeting and the subsequent delivery of the certified check and the notes, and in return therefor acknowledged full payment of all obligations due for construction of the project, and waived its lien rights thereon. At the time of the September, 1973 meeting and

at the time of the delivery of the Owner's and Contractor's Affidavit, defendants should have been aware of the defenses they have asserted relating to delays in construction and excessive cost. By accepting the Owner's and Contractor's Affidavit and using such document to their benefit, and by allowing the plaintiff to àct to its detriment relying on defendants' tender of two notes, the defendants waived their rights to assert defenses to the construction contract, and are estopped from any such assertion."

\*        \*        \*

"7. No genuine issue of fact has been raised as to any duress in the making of the notes which would constitute a defense to this action."

From this judgment defendants appeal.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey and Michael D. Meeker, for plaintiff.*

*Dees, Johnson, Tart, Giles & Tedder, by J. Sam Johnson, Jr., for defendants.*

BROCK, Chief Judge.

Defendants' appeal raises the procedural issue of whether summary judgment was properly granted as to any or all issues in the dispute between these parties.

[1] Defendants contend that Judge Seay erred in finding no genuine issue as to the material fact of accord and satisfaction. The breach of contract alleged by defendants in their answer can be a valid defense to payment of the notes. *Stelling v. Trust Co.,* 213 N.C. 324, 197 S.E. 754 (1938). In order to avoid defendants' defense and counterclaim, plaintiff alleged the affirmative defense of accord and satisfaction. If proven, accord and satisfaction is a bar to the assertion of any claims on the underlying obligation and thus would preclude defendants from asserting their breach of contract claims. *Bizzell v. Bizzell,* 247 N.C. 590, 101 S.E. 2d 668, *cert. den.* 358 U.S. 888, 3 L.Ed. 2d 115, 79 S.Ct. 129, *reh. den.* 358 U.S. 938, 3 L.Ed. 2d 310, 79 S.Ct. 322 (1958).

[2] In this case the plaintiff has the burden of proof on accord and satisfaction. Moreover, as movant for summary judgment under Rule 56, plaintiff has the added burden of

showing no genuine issue as to the existence of an accord and satisfaction. Normally, the existence of an accord and satisfaction is a question of fact for the jury. But where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record. 1 Am. Jur. 2d, Accord and Satisfaction, § 53, p. 352.

The record before Judge Seay consisted of the following: plaintiff's verified complaint, defendants' unverified answer and counterclaim, plaintiff's verified reply to the counterclaim, stipulations, admissions, plaintiff's affidavit in support of summary judgment, defendants' affidavit in opposition, and documentary exhibits including the contract, notes, and owner's and contractor's affidavit. From these materials it is clear that the project was completed in September 1973. There was a meeting of the parties to discuss the problems with the project, and there was a dispute as to the amount due the plaintiff. An agreement was reached whereby defendants agreed to execute the notes. In return plaintiff agreed to execute an owner's and contractor's affidavit which acknowledged complete payment by the defendants. These instruments were subsequently executed and delivered, and defendants went into possession of the project. Plaintiff alleges these transactions constituted an accord and satisfaction. Defendants admit agreeing to the execution of the notes but contend that there was no resolution of the problems or complete acceptance.

[3]   Accord and satisfaction may result where there is a dispute as to the amount actually due followed by payment of something less than or different from the amount claimed. *Products Corporation v. Chestnutt*, 252 N.C. 269, 113 S.E. 2d 587 (1960); 1 Am. Jur. 2d, Accord and Satisfaction, § 27, p. 325. In the case at bar defendants, by their own affidavit, admit that at the September meeting the amount remaining due was disputed. Yet they agreed to execute the notes in issue.

[4]   Whether or not there is an accord and satisfaction upon the delivery and acceptance of a debtor's note depends on the intent of the parties. "If the agreement is that the note shall be received in satisfaction and discharge of the original debt or claim, and the note is actually delivered, an accord and satisfaction will result regardless of whether the note was paid." 1 Am. Jur. 2d, Accord and Satisfaction, § 48, p. 345. That the

notes were given in full satisfaction of the original debt is clearly established by the owner's and contractor's affidavit:

> "All of the persons, firms, and corporations except those whose names, if any, appear on the Waiver of Liens on the reverse side hereof, including General Contractor and all subcontractors, who have furnished services, labor, or materials, according to plans and specifications or extra items, used in the construction or repair of such improvements, *have been paid in full,* that there are no mechanics' or materialmen's liens against said property and no claims outstanding which would entitle the holder thereof to claim a lien against the property (except those claims, if any, which are waived by the Waiver of Liens on the reverse side hereof) and *that such construction or repair has been fully completed and accepted by the owner. General Contractor hereby waives and releases his right to file a mechanic's or materialmen's lien against said property . . . "*
> (Emphasis added.)

This owner's and contractor's affidavit was executed and delivered to defendants in return for the delivery and execution of the notes. Plaintiff clearly accepted the notes as a complete resolution of claims, even to the extent of waiving its lien rights. Defendants are careful in their afidavit not to deny that the owner's and contractor's affidavit was given in return for the notes. They merely say "[t]hat the owner's and contractor's affidavit spoken of in the affidavit of N. Carl Monroe was not given in consideration for the notes sued upon in this action." Whether or not the giving of the owner's and contractor's affidavit was consideration is a question of law, and defendants' statement is thus a conclusion of law. Regardless of defendants' statement, they wanted the contractor's affidavit and relied on it as evidence that the contract had been completed. This is seen in defendants' admission that they received the contractor's affidavit and subbmitted it to their lender to secure permanent financing.

Plaintiff's showings coupled with defendants' admissions are clearly sufficient to show an accord and satisfaction. Defendants claim, however, that since they filed an affidavit opposing summary judgment, in which they stated on personal knowledge that no resolution of the dispute or complete acceptance had occurred, then the existence of an accord and satisfaction was sufficiently put in issue.

Our Supreme Court has held that the movant for summary judgment with the burden of proof should lose if the opposing party introduces materials showing a clearly disputed issue of fact. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976). But *Kidd v. Early* also says that in order to resist a motion for summary judgment, it is encumbent upon the opposing party "to show that he has, or will have, evidence sufficient to raise an issue of fact." *Id.* at 370, 222 S.E. 2d at 410. Rule 56 does not contemplate the use of affidavits merely to deny allegations in the pleadings.

Plaintiff's affirmative defense of accord and satisfaction was first raised in its reply to defendants' answer and counterclaim. Since there were no further pleadings required in the case, defendants' first opportunity to attack the defense was in their affidavit in opposition to the motion. In that affidavit defendants simply denied any resolution of the problems concerning the project. This amounts to a mere denial of the allegations of plaintiff's responsive pleading and does not allege particular or precise facts showing in what way or to what extent plaintiff breached the contract or in what way the defendants pressed their objections. Furthermore, in none of the materials properly before Judge Seay do defendants attempt to controvert plaintiff's showing that at no time from the execution of the notes until suit some year and one-half later did the defendants deny their obligation on the notes by reason of plaintiff's breach. On the contrary, defendants consistently communicated to plaintiff that their failure to pay was due only to difficulty in obtaining the needed money.

Defendants have failed to show that they have or will have evidence sufficient to raise an issue of fact. The only possible inference to be drawn from the materials before Judge Seay was that an accord and satisfaction had been reached. Summary judgment for plaintiff was therefore appropriate on the issues of accord and satisfaction and defendants' breach of contract claims.

[5] Defendants raised as a second defense to the notes failure of consideration. Judge Seay found correctly that an accord and satisfaction existed. Thus, defendants received the owner's and contractor's affidavit in return for the notes. By that instrument plaintiff admitted being fully paid on the underlying obligation and also waived its rights to file and perfect mechanic's

Construction Co. v. Coan

and materialmen's liens. The Court, in *Bumgardner v. Groover*, 245 N.C. 17, 95 S.E. 2d 101 (1956), held:

"Undoubtedly, the release or waiver of a legal right, or a forebearance to exercise a legal right, is a sufficient consideration to support a note made on account of it."

That the lien waiver constituted value to the defendants is evidenced by their admission of using the owner's and contractor's affidavit to obtain permanent financing.

[6] Finally, the defendants assert duress as a defense to the notes. They allege in their unverified pleading and in their affidavit that they were forced to agree to and later execute the notes because plaintiff "implicitly" threatened to discontinue work on two other contracts. A threat to breach a contract does not constitute duress unless the remedy afforded by the courts is inadequate. *Smithwick v. Whitley*, 152 N.C. 369, 67 S.E. 913 (1910). Further, a threatened breach of contract is not coercive unless the failure to perform as promised would result in irreparable injury to business. 13 Williston on Contracts, § 1617 (3d ed. 1970). Finally, G.S. 1A-1, Rules 8 and 9 require that allegations of duress be stated with particularity.

Nowhere in defendants' pleadings or affidavit are coercive circumstances alleged or described other than the bare statement that the "defendants were implicitly threatened by the plaintiff with discontinuation" of two other projects. Nowhere do defendants allege inadequate remedies at law or irreparable damage. Defendants have failed to raise a genuine issue of fact as to any duress which would constitute a defense.

It appears that the trial court erred in its computation of interest due on the two notes. Therefore, that part of finding of fact number 9 which determines the interest due; that part of conclusion of law number 2 which concludes the amount of interest due; and that part of the judgment in excess of the total principal sum of the two notes are vacated. Judgment for the principal sum of the two notes ($189,715.53) is affirmed. The cause is remanded to the superior court for a hearing and determination of the interest due on the two notes from their dates

Insurance Co. v. Ingram, Comr. of Insurance

(10 September 1973) until the date of judgment (5 February 1976).

Affirmed in part.

Vacated in part and remanded.

Judges PARKER and ARNOLD concur.