DIANE FUTRELLE, Plaintiff v. DUKE UNIVERSITY, SUSAN J. FEINGLOS, PATRICIA L. THIBODEAU, Defendants

No. COA96-902

(Filed 19 August 1997)

**1. Appeal and Error § 124 (NCI4th)— denial of motion to confirm arbitration—interlocutory order—immediate appeal**

An interlocutory order denying defendants' motion to confirm an arbitration award and to dismiss plaintiff's action for breach of contract, wrongful discharge, and defamation involved a substantial right and was immediately appealable.

**2. Accord and Satisfaction § 8 (NCI4th)— arbitration award—acceptance and cashing of check**

Plaintiff university medical librarian's acceptance and cashing of a check from defendant university pursuant to an arbitration award in a dispute concerning her termination by her supervisors and the university constituted an accord and satisfaction, although the check did not contain the words "payment in full," where the undisputed facts show (1) that defendants intended the check to be full and final payment resolving the dispute, and (2) that plaintiff understood defendants' intent.

**3. Arbitration and Award § 33 (NCI4th)— cashing of check— ratification of arbitration award**

Plaintiff ratified an arbitration award when she accepted and cashed defendants' check paid pursuant to the award.

**4. Arbitration and Award § 36 (NCI4th)— wrongful termination—arbitration award—cashing of check—waiver of related claims**

Plaintiff university medical librarian's acceptance and cashing of defendant university's check constituted an accord and sat-

**FUTRELLE v. DUKE UNIVERSITY**

[127 N.C. App. 244 (1997)]

isfaction and ratification of an arbitration award pertaining to a dispute as to whether she was wrongfully terminated by defendant university which waived any right to bring future claims arising out of or related to the termination where the letter sent by defendant university with the check stated that payment was being made in accordance with the arbitration award; the stipulated arbitration issue was whether plaintiff was terminated in violation of the law or university policy; and the arbitration award referred to provisions of the university's dispute resolution procedure regarding the binding effect of arbitration. Therefore, plaintiff's claims for breach of contract and wrongful discharge, which related directly to whether she was wrongfully terminated, and her defamation claims, which arose out of and were directly related to her termination, were barred and should have been dismissed by the trial court.

Appeal by defendants from order entered 24 April 1996 by Judge F. Gordon Battle in Orange County Superior Court. Heard in the Court of Appeals 2 April 1997.

*Michael B. Brough & Associates, by Stephen D. Brody and Michael B. Brough, for plaintiff-appellee.*

*Fulbright & Jaworski L.L.P., by John M. Simpson, for defendant-appellants.*

McGEE, Judge.

In November 1992, plaintiff was hired by Duke University (Duke) for a specified term of employment as a Learning Resources Librarian at the Duke University Medical Center Library (Library). Plaintiff became an "exempt employee" meaning that she was not subject to a collective bargaining agreement. Duke contends, and plaintiff disagrees, that Duke's Exempt Staff Member Dispute Resolution Procedure (DRP) became part of plaintiff's employment contract when she was hired.

In September 1994, plaintiff requested permission from Susan Feinglos, her supervisor, to attend a professional conference. Defendants contend Feinglos denied the request. Plaintiff contends Feinglos authorized her to attend the conference if she completed equipment specifications for a work project. Plaintiff attended the conference and was absent from the workplace on 29 September and 30 September 1994. On 29 September 1994, plaintiff contacted

Feinglos from the conference site at which time Feinglos told plaintiff she had not been given permission to attend the conference. Upon plaintiff's return to work on 3 October 1994, Feinglos handed her a termination letter. Another supervisor, Patricia L. Thibodeau, escorted plaintiff to her office and told her to pack her belongings and leave the premises.

Plaintiff contends Feinglos sent a copy of the termination letter to Gordon Hammes, an administrator with Duke University Medical Center. She also contends that, shortly after her termination, Thibodeau attended a professional conference and told one or more persons in attendance that plaintiff was terminated for "willful insubordination." Plaintiff further contends Thibodeau told several of plaintiff's professional colleagues at the Library that plaintiff had been terminated for willful insubordination, grave misconduct, and a poor work performance history.

Plaintiff challenged her dismissal through the DRP. After proceeding through various steps of review under DRP, plaintiff requested arbitration under Article IV of DRP which provides that the decision of the arbitration panel "shall be final and binding between the parties as to all claims which were or could have been raised in connection with the dispute, to the full extent permitted by the United States Arbitration Act." In the letter requesting arbitration, plaintiff's attorney stated plaintiff's "request is made without prejudice to [her] right to pursue any other form of relief" and that it was his understanding that arbitration "would not have any preclusive effect." In this letter, he asked Duke to respond if it had a contrary understanding so that plaintiff would have the opportunity to withdraw her request for arbitration. In a response letter, Duke's attorney accepted plaintiff's request for arbitration but also stated "I am enclosing a copy of the University's exempt staff member dispute resolution procedure, which answers the other questions in your letter."

The parties then proceeded with arbitration before a panel of the American Arbitration Association. In an award issued 6 July 1995, the panel concluded plaintiff was intentionally insubordinate but that termination was too harsh because she had no past incidents of discipline on her record and had not received any corrective discipline prior to termination. The panel further concluded the appropriate penalty was reinstatement with three month's back pay and benefits. However, the panel also quoted from a DRP provision which gives Duke the discretion to pay severance pay in lieu of reinstatement and

concluded, in reference to this option, that "the parties are bound by that language, if it is properly executed and enforced."

In July 1995, Duke's attorney informed plaintiff that Duke was exercising its discretion under the DRP to pay severance pay in lieu of reinstatement and enclosed a check in the amount of $16,158.69. In her affidavit, defendant Thibodeau asserts this check cleared Duke's account in August 1995. Accompanying the check was a letter from Duke University Counsel which stated:

> In accordance with the Arbitration Panel's Award, [the defendant] is enclosing a check payable to [plaintiff] which includes payment for six (6) months severance pay (in lieu of reinstatement); for three (3) months backpay; and for vacation accrued for such three (3) months backpay; and for vacation accrued for such three (3) month period.

On 3 October 1995, plaintiff filed this action against defendants seeking damages for breach of contract, wrongful discharge, and defamation. On 15 November 1995, defendants moved to confirm the arbitration award and to dismiss the action. By order filed 24 April 1996, Judge F. Gordon Battle denied defendants' motion. Defendants appeal.

I.

[1] We first note this appeal is interlocutory because the order denying defendants' motion to confirm the arbitration award and dismiss the action " 'does not determine the issues but directs some further proceeding preliminary to final decree.' " *See Waters v. Personnel, Inc.*, 294 N.C. 200, 207, 240 S.E.2d 338, 343 (1978) (quoting *Greene v. Laboratories, Inc.*, 254 N.C. 680, 693, 120 S.E.2d 82, 91 (1961)). However, we have held an "order denying arbitration, although interlocutory, is immediately appealable because it involves a substantial right which might be lost if appeal is delayed." *Bennish v. North Carolina Dance Theater*, 108 N.C. App. 42, 44, 422 S.E.2d 335, 336 (1992) (quoting *Prime South Homes v. Byrd*, 102 N.C. App. 255, 258, 401 S.E.2d 822, 825 (1991)). Similarly here, we hold the order denying defendants' motion involves a substantial right because the right to arbitration would effectively be lost if appeal is delayed.

We initially recognize that "North Carolina has a strong public policy favoring arbitration." *Red Springs Presbyterian Church v. Terminix Co.*, 119 N.C. App. 299, 303, 458 S.E.2d 270, 273 (1995). The essential thrust of the Federal Arbitration Act, which is in accord

with the law of our state, is to require the application of contract law to determine whether a particular arbitration agreement is enforceable; thereby placing arbitration agreements "upon the same footing as other contracts." *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687, 134 L. Ed. 2d 902, 909 (1996) (citations omitted). It is essential that parties to an arbitration specify clearly the scope and terms of their agreement to arbitrate as enforcement of arbitration agreements is not subject to less scrutiny than the enforcement of other agreements.

[2] Defendants contend plaintiff was bound by the arbitration award pursuant to her employment contract and, in the alternative, by her participation in arbitration under the DRP, and that the trial court therefore erred by failing to confirm the award and denying their motion to dismiss. We do not reach the merits of whether there was a valid agreement to arbitrate, however, because we hold plaintiff's acceptance of defendants' payment pursuant to the arbitration award constitutes both an accord and satisfaction and a ratification of the arbitration award.

In its order denying defendants' motion to confirm the award and to dismiss plaintiff's claims, the trial court stated it reviewed the pleadings and affidavits filed in support of and in opposition to this motion. When a trial court considers matters outside the pleadings, a motion to dismiss may be converted into a motion for summary judgment. *King v. Durham County Mental Health Authority*, 113 N.C. App. 341, 345, 439 S.E.2d 771, 774 (1994). In addition, here the issue of accord and satisfaction may be resolved as a matter of law since there are no material facts in issue surrounding the delivery and acceptance of defendants' payment. "Although the existence of accord and satisfaction is generally a question of fact, 'where the only reasonable inference is existence or non-existence, accord and satisfaction is a question of law and may be adjudicated by summary judgment when the essential facts are made clear of record.' " *Zanone v. RJR Nabisco*, 120 N.C. App. 768, 771, 463 S.E.2d 584, 587 (1995).

Article 3 of the Uniform Commercial Code is invoked when a dispute arises over a payment made with a negotiable instrument, such as the check issued by the defendants to plaintiff. *See* N.C. Gen. Stat. § 25-3-102 (1995) (discussing scope of Article 3); *see also* N.C. Gen. Stat. § 25-3-104 (1995) (defining "negotiable instrument"). Under this article, a payment by a party may constitute an accord and satisfaction of a dispute if the following requirements are met:

**FUTRELLE v. DUKE UNIVERSITY**

[127 N.C. App. 244 (1997)]

(a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

(b) . . . the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

N.C. Gen. Stat. § 25-3-311 (1995).

In *Zanone*, RJR Nabisco by letter offered former employee Zanone a $5000 check as "full and final payment of [Zanone's] severance relocation associated benefits." *Zanone*, 120 N.C. App. at 772, 463 S.E.2d at 588. Although RJR's letter was not marked "payment in full" or accompanied by a letter explaining it was "payment in full," this Court found the letter "established RJR's intent [that] the $5000 check be treated as an accord" because the facts and circumstances surrounding receipt of a check may establish an accord and satisfaction. *Id.* Upon receipt of RJR's letter, Zanone responded stating he regretted he could not accept the offer as final and he believed $5000 to be insufficient. *Id.* at 772-73, 463 S.E.2d at 588. RJR then mailed the check to Zanone who cashed it. This Court found: "[a]lthough Zanone registered his objection to the $5000 amount by letter . . . , he had no further communication with RJR concerning the disputed debt prior to cashing the $5000 check." *Id.* at 774, 463 S.E.2d at 589. This Court concluded "Zanone received the $5000 check clearly understanding RJR was offering the $5000 check as 'full and final' payment of the disputed debt" and held there was accord and satisfaction as a matter of law barring Zanone's breach of contract claim. *Id.* at 774-75, 463 S.E.2d at 589.

Similarly here, defendants have established, as a matter of law, the Article 3 requirements for accord and satisfaction. Defendants have introduced undisputed evidence that they tendered to plaintiff in good faith a check for $16,158.69. By affidavit defendant Thibodeau testified this check cleared Duke's account in August 1995. Plaintiff has presented no evidence to contest defendants' assertion that plaintiff cashed the check. The requirement, that a dispute exist, is satisfied in that, prior to payment of this amount, the

parties disputed what remedy, if any, plaintiff was entitled to receive because of defendants' decision to terminate her employment contract. The requirement of a conspicuous statement that the instrument is tendered as full satisfaction of the claim is satisfied by the letter from Duke University Counsel which accompanied the check. This letter acknowledges receipt of the arbitration panel's decision and states defendants are exercising their discretion to pay severance pay in lieu of the reinstatement ordered in the arbitration award. The letter states the check is enclosed "[i]n accordance with the Arbitration Panel's Award." As in *Zanone*, the omission of the words "payment in full" does not prevent the accord and satisfaction given the facts and circumstances surrounding payment and receipt of the check. We hold there was an accord and satisfaction as a matter of law because the undisputed facts show the following to be the only reasonable inferences regarding the parties' intent: (1) that defendants intended the check to be full and final payment resolving the dispute and (2) that given the reference to the final arbitration award, plaintiff understood that this was defendants' intent.

[3] Furthermore, by cashing the check as presented to her, plaintiff effectively ratified the arbitration award. The Oregon Court of Appeals reached a similar conclusion in *Harrington v. Warlick*, 758 P.2d 387 (Or. App. 1988). In *Harrington*, the court held that the defendants waived their right to appeal an arbitration award when they accepted the award. *Id.* at 388. Although here the issue is whether a party may collaterally attack an arbitration award through civil action rather than whether the party may appeal the award, we find the same principles apply. Thus, we hold plaintiff ratified the arbitration award when she accepted defendants' check paid pursuant to the award. For this reason, the trial court erred by failing to confirm the arbitration award.

## II.

[4] Since the trial court erred by denying the motion to confirm the arbitration award, upon remand the trial court is directed to confirm and enter judgment on the award. Once judgment is entered upon the arbitration award, it will then operate "as an estoppel not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." *Rodgers Builders v. McQueen*, 76 N.C. App. 16, 22, 331 S.E.2d 726, 730 (1985),

FUTRELLE v. DUKE UNIVERSITY

[127 N.C. App. 244 (1997)]

*disc. rev. denied,* 315 N.C. 590, 341 S.E.2d 29 (1986). Since all claims within the scope of the arbitration proceeding are barred by judgment on the award, we must determine the scope of the accord and satisfaction and plaintiff's ratification of the arbitration award and the resulting impact on plaintiff's claims.

In determining whether the parties agreed to submit a particular dispute or claim to arbitration, we must look to the language in the agreement. *Id.* at 23-24, 331 S.E.2d at 731. "Whether denominated accord and satisfaction or compromise and settlement, the executed agreement terminating or purporting to terminate a controversy is a contract, to be interpreted and tested by established rules relating to contracts." *Casualty Co. v. Teer Co.,* 250 N.C. 547, 550, 109 S.E.2d 171, 173 (1959). In an accord and satisfaction, the accord is the agreement and the satisfaction is execution of the performance of the agreement. *Bizzell v. Bizzell,* 247 N.C. 590, 601, 101 S.E.2d 668, 676, *cert. denied,* 358 U.S. 888, 3 L. Ed. 2d 115 (1958), *reh'g denied,* 358 U.S. 938, 3 L. Ed. 2d 310 (1959); *Bumgarner v. Tomblin,* 63 N.C. App. 636, 642, 306 S.E.2d 178, 183 (1983). Here, the letter sent by defendants along with the check states the payment is being made "[i]n accordance with the Arbitration Panel's Award." By so referencing the award, this letter effectively incorporated the terms of the arbitration award making the terms of the award part of the offer of settlement included in the accord. Plaintiff's ratification of the award by cashing the check effected her acceptance of the accord terms.

The stipulated issue of the arbitration stated in the arbitration award was whether the plaintiff was "terminated in violation of the law or University policy." Given this stipulation, we hold plaintiff's claims for breach of contract and wrongful discharge, both of which relate directly to whether she was wrongfully terminated, are barred and should have been dismissed. The award also states that it is "based on the entire record, the Exempt Staff Member Dispute Resolution Procedure [DRP] and the facts and circumstances of this case." Section E of the DRP provides "[t]he decision of the panel shall be final and binding between the parties as to all claims which were or could have been raised in connection with the dispute, to the full extent permitted by the United States Arbitration Act." The award further states that the parties are bound by language in the DRP which gives defendants the option to pay severance pay in lieu of reinstatement. Since the arbitration award, ratified by plaintiff, directly references the DRP provisions regarding the binding effect of arbitration and states that it is based on the DRP, we hold, as a mat-

ter of law, that plaintiff accepted the resolution of the dispute based solely on the stipulated issue and waived any right to bring future claims arising out of or related to the termination when she ratified the award by accepting the check in satisfaction of the dispute. Since the slander and libel claims clearly arise out of and are directly related to her termination, these claims should be dismissed.

We note that parties entering into arbitration should exercise great care to delineate the precise claims and disputes to be resolved and to reserve specifically any claims they wish not to be precluded by the arbitration. As this Court has previously emphasized:

A party is required to bring forth the whole case at one time and will not be permitted to split the claim or divide the grounds for recovery; thus, a party will not be permitted, except in special circumstances, to reopen the subject of the arbitration or litigation with respect to matters which might have been brought forward in the previous proceeding.

*Rodgers Builders*, 76 N.C. App. at 23, 331 S.E.2d at 730.

In summary, the trial court erred by not confirming the arbitration award and by not dismissing all of plaintiff's claims.

Reversed and remanded.

Judges COZORT and MARTIN, John C., concur.

Judge Cozort participated in this opinion prior to his resignation on 31 July 1997.